IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JILES R. HANDS, *et al.*, | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    CIVIL ACTION 09-0619-WS-N |
| | ) |
| WINN-DIXIE STORES, INC., | ) |
| | ) |
|     Defendant. | ) |

### ORDER

This matter comes before the Court on defendant's Motion for Partial Summary Judgment as to Plaintiff Jiles Hands' Claims for Monetary Relief (doc. 28). The Motion has been briefed and is now ripe for disposition.

**I.    Relevant Background.[1]**

Virtually all pertinent facts for the Motion for Partial Summary Judgment are undisputed. Jiles R. Hands is one of five plaintiffs in this action who has filed suit against Winn-Dixie Stores, Inc., alleging racial discrimination in employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981. In the Amended Complaint, Hands (who is African-American) maintains that he was passed over for promotions that Winn-Dixie awarded to less qualified white employees, and that his non-selection for such positions ultimately forced him to resign because he realized that he had no future at Winn-Dixie. Among the relief that Hands demands in this action is "entry of an award of compensatory damages, punitive damages, and nominal damages for [his] individual claims." (Doc. 18, at 35.) Hands also seeks declaratory and injunctive relief.

---

[1]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, to the extent that any discrepancies do exist as to relevant facts, plaintiff Hands' evidence is taken as true and all justifiable inferences are drawn in his favor.

The record reflects that Hands first raised allegations of race discrimination against Winn-Dixie by filing an administrative Charge of Discrimination with the EEOC back on August 31, 2007. (Doc. 28, Exh. 2.) Two months later, on November 1, 2007, Hands (along with joint debtor Anita Hands, who is not a party to this action) filed a Chapter 13 Voluntary Petition in U.S. Bankruptcy Court in the Middle District of Alabama. (Doc. 28, Exh. 1.) Hands was and is represented by counsel in the bankruptcy matter. In Schedule B of that bankruptcy petition, Hands did not list his EEOC Charge against Winn Dixie as "Personal Property," despite that Schedule's prompt for "Other contingent and unliquidated claims of every nature." (*Id.*)[2] Likewise, in the section of the bankruptcy petition labeled "Statement of Financial Affairs," Hands answered "none" when asked to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case." (*Id.*) Hands signed both the bankruptcy petition and Statement of Financial Affairs under penalty of perjury.

The problem, of course, is that neither Schedule B nor the Statement of Financial Affairs were accurate, because they omitted reference to the EEOC Charge. To make matters worse, as of August 5, 2010, when Winn-Dixie filed its Motion for Partial Summary Judgment in this case, Hands had never amended the bankruptcy petition to disclose the EEOC Charge or the federal litigation into which it had blossomed. Hands' explanation for these omissions is that he "did not realize … that [he] was supposed to have listed" the EEOC Charge at the time, and that he likewise "did not realize that … [he] was supposed to have amended [his] bankruptcy filings to include this lawsuit as a potential or contingent asset." (Hands Decl., ¶¶ 4-5.)

That said, upon receipt of Winn-Dixie's Rule 56 Motion, Hands immediately took steps to amend his bankruptcy petition. (Hands Decl., ¶ 6.) The parties are in agreement that Hands' bankruptcy proceedings remain open and ongoing; therefore, it was not necessary for him to

---

[2] However, Hands did list in the category of "Contingent and noncontingent interests" a line item for "pending lawsuit against Wachovia, insurance for car accident (amount unknown)" and valued that contingent interest at $10,000.00. (*Id.*) It is unclear why Hands saw fit to include the insurance dispute, but not his pending discrimination claims for monetary relief, in the bankruptcy schedules.

reopen terminated proceedings in Bankruptcy Court in order to file that amendment.[3]  As amended on August 16, 2010, Schedule B of Hands' bankruptcy petition lists under the category of "Other contingent and unliquidated claims of every nature" an entry for "lawsuit against Winn Dixie … (value unknown)." (Doc. 40, Exh. 2.)[4]

The sole question presented by Winn-Dixie's Motion for Partial Summary Judgment is whether Hands' nearly three-year delay in declaring his financial interest in this lawsuit (and the EEOC Charge that preceded it) to the Bankruptcy Court should result in his being judicially estopped from pursuing claims for monetary relief against Winn-Dixie in this litigation.

## II.     Analysis.

### A.     *Summary Judgment Standard.*

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district

---

[3]  Defendant stated in briefing its Rule 56 Motion that Hands' Chapter 13 Petition "has not been closed, dismissed or converted." (Doc. 47, at 2.) Similarly, Hands wrote in his response that his "bankruptcy proceedings remain open." (Doc. 40, at 7.) The Court has independently confirmed this to be true by reviewing the electronic case file for Case No. 07-31716 in the U.S. Bankruptcy Court for the Middle District of Alabama. *See generally Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp.2d 108, 111 (D.D.C. 2008) ("A court may take judicial notice of public records from other proceedings."); *Airframe Systems, Inc. v. Raytheon Co.*, 520 F. Supp.2d 258, 262 (D. Mass 2007) ("this Court takes judicial notice of the contents of court documents from the previous case, as they are readily ascertainable from a reliable source"); *United States ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp.2d 673, 680 (W.D. Tex. 2006) ("It is clear that courts may take judicial notice of court filings to establish the fact of litigation and related filings."). That case file confirms that Hands' bankruptcy action remains open, with activity as recent as October 1, 2010; however, it also shows that the Bankruptcy Court entered an order on January 24, 2008 confirming Hands' Chapter 13 plan. Of course, that confirmed plan was prepared and confirmed in reliance on Hands' bankruptcy schedules, which failed to disclose his potential right of recovery against Winn-Dixie.

[4]  The docket sheet for the bankruptcy proceeding also reflects that on August 31, 2010, Hands' counsel filed a "Motion to Modify Confirmed Chapter 13 Plan," for the stated purpose of "pledg[ing] lawsuit proceeds if any from the lawsuit against Winn Dixie." The proposed modification would add a sentence to the Chapter 13 Plan in bold, all-caps type reading as follows: "The debtors will pledge any lawsuit proceeds (if any) from the lawsuit against Winn Dixie to the Chapter 13 Plan for the benefit of unsecured creditors." The Bankruptcy Court granted that motion via order entered on September 27, 2010.

court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

### B. Analysis.

#### 1. The Doctrine of Judicial Estoppel.

The Court does not have to beat a new path through the underbrush to resolve the pending summary judgment motion. In recent years, the Eleventh Circuit has had multiple occasions to address the issue of judicial estoppel in analogous contexts.[5] The appellate court has explained that "[t]he purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment. … Specifically, judicial estoppel is designed to prevent a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by the party in a previous preceding [*sic*]." *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1273 (11th Cir. 2010) (citations and internal quotation marks omitted); *see also Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) ("[j]udicial estoppel is applied to the calculated assertion of divergent sworn

---

[5] The judicial estoppel issue in this case is governed solely by federal law, without regard to state-law principles. *See Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) ("In this case, judicial estoppel is raised in the context of a bankruptcy proceeding and a federal employment discrimination case; therefore, federal law governs our analysis.").

positions" and "is designed to prevent parties from making a mockery of justice by inconsistent pleadings") (citations omitted).

Judicial estoppel "is an equitable doctrine invoked at a court's discretion." *Burnes*, 291 F.3d at 1285; *see also Ajaka v. Brooksamerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006) (similar). Moreover, the law is clear that courts must not impose "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts." *Burnes*, 291 F.3d at 1285 (citation omitted); *see also Robinson*, 595 F.3d at 1273 (for judicial estoppel purposes, "courts must always give due consideration to the circumstances of the particular case"); *Ajaka* 453 F.3d at 1344 (emphasizing that judicial estoppel is a "flexible rule" and that courts must "take into account all of the circumstances of each case") (citation omitted). That said, this Circuit's precedents focus on "two primary factors for establishing the bar of judicial estoppel." *Robinson*, 595 F.3d at 1273. "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Burnes*, 291 F.3d at 1285 (citation omitted); *see also Robinson*, 595 F.3d at 1273 (same). Indeed, the *Burnes* panel opined that these two factors alone "provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case." 291 F.3d at 1285-86; *see also Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1293 (11th Cir. 2003) (recognizing that "applicability of judicial estoppel largely turns on two factors" described herein). Therefore, while those factors are not viewed as exclusive or exhaustive, the judicial estoppel analysis here is shaped primarily by consideration of (1) whether Hands took inconsistent positions under oath in a prior proceeding, and (2) whether those inconsistencies were calculated to make a mockery of the judicial system.

    2.  *Application of Judicial Estoppel Principles to Hands' Claims.*

Both of the "primary factors" identified by the Eleventh Circuit favor dismissal of Hands' claims for monetary relief pursuant to the doctrine of judicial estoppel.

As for the first factor (the taking of inconsistent positions under oath), Hands' failure to identify his employment discrimination claims against Winn-Dixie in his signed, sworn bankruptcy schedules plainly amounts to the taking of inconsistent positions under oath in a prior proceeding. After all, "[a] debtor seeking shelter under the bankruptcy laws must disclose all

assets, or potential assets, to the bankruptcy court." *Ajaka*, 453 F.3d at 1344.[6] Moreover, "under the established law of this circuit, a Chapter 13 debtor has a statutory duty to disclose changes in assets," and "a pending lawsuit seeking monetary compensation qualifies as an asset." *Robinson*, 595 F.3d at 1274; *see also In re Waldron*, 536 F.3d 1239, 1244 (11th Cir. 2008) (recognizing "that a debtor had a duty to amend his schedule of assets to disclose a complaint that he filed after his plan to pay his creditors had been confirmed"). Simply put, there is no doubt that Hands was under a statutory duty to include his EEOC Charge in his asset schedules in Bankruptcy Court, and to amend those schedules to reflect his lawsuit against Winn-Dixie once it was filed. Yet he did not do so until after he received the instant Motion for Partial Summary Judgment, some 11 months after the inception of this litigation. "Because there is no question that [Hands] failed to assert his [Title VII / § 1981 claim] as an asset in the bankruptcy proceeding, the first prong of our judicial estoppel test is satisfied." *Ajaka*, 453 F.3d at 1344; *see also Robinson*, 595 F.3d at 1275 ("By failing to update her bankruptcy schedule to reflect her pending claim, Robinson represented that she had no legal claims to the bankruptcy court while simultaneously pursuing her legal claim against Tyson in the district court. These actions, both taken under oath, are clearly inconsistent."). Hands clearly took inconsistent positions under oath in the bankruptcy proceeding.

As for the second primary factor (whether the inconsistencies were calculated to make a mockery of the judicial system), the Eleventh Circuit requires "intentional contradictions, not simple error or inadvertence." *Burnes*, 291 F.3d at 1286; *see also Robinson*, 595 F.3d at 1275 ("While an estopped party's contradiction must be intentional, such intent may be inferred from the record."). Hands insists that his nondisclosure of his employment discrimination claims against Winn-Dixie was purely inadvertent. But "inadvertence" has a specialized meaning in this context. Indeed, "[i]n considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Robinson*, 595 F.3d at 1275 (citation omitted); *see also Barger*, 348 F.3d at 1295 ("The failure to comply

---

[6] *See also Burnes*, 291 F.3d at 1286 ("Full and honest disclosure in a bankruptcy case is crucial to the effective functioning of the federal bankruptcy system.") (citation and internal quotation marks omitted).

with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment."). Hands does not and cannot disclaim knowledge of his Title VII claims against Winn-Dixie; after all, he personally signed the EEOC Charge on August 31, 2007 and his retained counsel filed this employment discrimination lawsuit on his behalf on September 22, 2009. Nor can Hands deny a motive for concealing these claims, given Eleventh Circuit authorities expressly recognizing a debtor's direct financial motive for doing so.[7] Because Hands knew about the undisclosed claims and stood to benefit financially at his creditors' expense by concealing them, the Court infers from the record his intent to make a mockery of the judicial system. Simply put, Hands' nondisclosure of the EEOC Charge and this lawsuit in his bankruptcy schedules was not "inadvertent" as that term is used in the judicial estoppel context.[8]

To be sure, upon Winn-Dixie's filing of a Rule 56 Motion predicated on this nondisclosure, Hands raced back to Bankruptcy Court and successfully amended his schedules

---

[7] *See, e.g., Robinson*, 595 F.3d at 1275-76 (Chapter 13 debtor had motive to conceal claims because she could have settled those claims, kept the proceeds for herself, and denied creditors a fair opportunity to claim those funds); *Waldron*, 536 F.3d at 1245 ("If postconfirmation assets were not subject to disclosure, modifications for increased payments would be rare because few debtors would voluntarily disclose new assets, and the trustee and creditors would be unlikely to obtain this information from sources other than the debtor."); *Barger*, 348 F.3d at 1296 ("Omitting the discrimination claims from the schedule of assets appeared to benefit her because, by omitting the claims, she could keep any proceeds for herself and not have them become part of the bankruptcy estate."); *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1291-92 (11th Cir. 2003) (Chapter 13 debtor had motive to conceal claim from bankruptcy court "because the hiding of assets affects the amount to be discounted and repaid" such that "his amount of repayment would be less" if that claim were omitted from bankruptcy estate's assets).

[8] The foundation of Hands' "inadvertence" argument is his self-serving declaration that he "simply did not know" that his EEOC Charge should have been listed in his bankruptcy filings and "did not realize … [he] was supposed to have amended [his] bankruptcy filings to include this lawsuit as a potential or contingent asset." (Hands Decl., ¶¶ 4-5.) This *post hoc* plea of ignorance of bankruptcy disclosure requirements – when the schedules clearly demanded disclosure of "all suits and administrative proceedings to which the debtor is or was a party" within the previous year, when Hands was and is represented by bankruptcy counsel in those proceedings, and when Hands did disclose an insurance dispute in those filings – does not qualify as inadvertence under applicable Eleventh Circuit authorities, given Hands' knowledge of his claims and his direct economic incentive to secret them from bankruptcy creditors.

(albeit nearly three years late) to correct the omission and to list his claims against Winn-Dixie as an asset from which his creditors might recover. Hands argues that this conduct proves the inadvertence of his omission. On that basis, Hands champions a "no harm, no foul" approach now that he has corrected his nondisclosure. This Court cannot agree. The Eleventh Circuit has repeatedly cast an unsympathetic eye to such stratagems, and has deemed them insufficient to dissipate the taint of the prior nondisclosure. *See, e.g.*, *Barger*, 348 F.3d at 1297 ("Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds."); *De Leon v. Comcar Industries, Inc.*, 321 F.3d 1289, 1292 (11th Cir. 2003) (claimant's effort to "amend his bankruptcy filings[] only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only after he is caught concealing them") (citation omitted); *Burnes*, 291 F.3d at 1288 (correction of bankruptcy schedules after omission is subject of dispositive motion "would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets").[9] To excuse Hands' misconduct would be to encourage litigants to play fast and loose with the judicial system, secure in the knowledge that, if caught, the only adverse repercussion would be making the disclosure that should have been made in the first instance. This Court will not adopt such a permissive approach.

In deference to the flexible inquiry contemplated by the Eleventh Circuit, the Court has carefully reviewed the parties' filings for other considerations that may bear on the propriety of applying judicial estoppel. There is a long line of appellate authorities endorsing the use of

---

[9] Implicit in these opinions is the notion that a debtor's intent is viewed at the time of the omission, not months or years later when the exigencies have shifted such that it now serves the debtor's purposes to disclose his claims after all. *See Robinson*, 595 F.3d at 1276 ("When reviewing potential motive, the relevant inquiry is intent at the time of non-disclosure.") (citation omitted). That Hands may now have every intention of coming clean and disclosing his claims fully, after being caught in an inconsistency from which he stood to profit, is simply not probative of his intent back in November 2007 (when he omitted his EEOC Charge from his bankruptcy schedules) and in September 2009 (when he filed this lawsuit but neglected to amend his bankruptcy schedules to identify its existence). Contrition is far less compelling when its impetus is the misdeed's exposure by a third party than when it flows from the actor's own volition.

judicial estoppel in circumstances closely analogous to those present here. *See, e.g., Robinson*, 595 F.3d at 1272 (affirming summary judgment for defendant in employment discrimination case where plaintiff failed to disclose that suit filed in the midst of her Chapter 13 bankruptcy plan); *Barger*, 348 F.3d at 1297 (affirming summary judgment for defendant in employment discrimination case where plaintiff omitted reference to that case in Chapter 7 filings, even though bankruptcy court found that failure to list discrimination suit had no substantive effect on bankruptcy petition); *De Leon*, 321 F.3d at 1292 (district court did not err in applying judicial estoppel to discrimination and retaliation claims, where plaintiff did not amend bankruptcy filings to add lawsuit as asset until nearly a year after bankruptcy court issued order confirming the Chapter 13 plan); *Burnes*, 291 F.3d at 1289 (summary judgment properly granted on judicial estoppel grounds where disclosure of lawsuit would have affected outcome of Chapter 7 proceedings); *Pavlov v. Ingles Markets, Inc.*, 2007 WL 1649099, *1 (11th Cir. June 6, 2007) (affirming district court's reliance on judicial estoppel to enter summary judgment against plaintiff who had failed to disclose this litigation as an asset in Chapter 13 bankruptcy proceedings); *Casanova v. Pre Solutions, Inc.*, 2007 WL 934424, *2 (11th Cir. Mar. 28, 2007) (judicial estoppel "bars a plaintiff from pursuing employment discrimination claims for damages that were not disclosed in a prior bankruptcy proceeding, where the plaintiff knew of the claims and had a motive to conceal them from the court"). Hands does not offer any reasonable basis for distinguishing his case from any of the foregoing authorities, nor does he provide any persuasive recitation of unique circumstances in this matter that might warrant a different outcome.[10]

---

[10] At best, Hands leans on the "no harm no foul" theme, insisting that with the correction of his Chapter 13 bankruptcy schedules after Winn-Dixie filed a Rule 56 motion, full disclosure has been achieved and he has "cure[d] the risk of inconsistent judgments," such that "there is no longer a risk of inconsistent court determinations." (Doc. 40, at 7-8.) It is true, of course, that a pertinent consideration is "whether the party successfully persuaded a court to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled." *Ajaka*, 453 F.3d at 1344 (citation omitted); *see also Robinson*, 595 F.3d at 1273 (recognizing among factors that "typically inform" judicial estoppel decision "whether the party succeeded in persuading a court to accept the earlier position"). But the damage has already been done here. The Bankruptcy Court confirmed Hands' Chapter 13 plan back in January 2008. That plan called for repayment of creditors' claims in 60 monthly installments of $1,860.00 (or until 22.14% of allowed unsecured claims or a pot of $6,000 was paid to the unsecureds). That plan – and the Bankruptcy (Continued)

**III.    Conclusion.**

In short, the Court finds that principles of judicial estoppel preclude plaintiff Jiles R. Hands from pursuing his monetary claims for employment discrimination against Winn-Dixie in these proceedings, in light of his nondisclosure of these claims in his Chapter 13 bankruptcy proceedings for a period of nearly three years until Winn-Dixie filed its Motion for Partial Summary Judgment.  The Court further finds that Eleventh Circuit precedent weighs strongly in favor of rejecting Hands' "inadvertence" argument and his suggestion that his inconsistent positions should be overlooked because he reconciled them after he was caught.  In the absence of countervailing facts and circumstances (which plaintiff has not identified), the Court exercises its discretion to conclude that Hands is **estopped** from pursuing his monetary claims in this action. Winn-Dixie's Motion for Partial Summary Judgment (doc. 28) is **granted**, and plaintiff Jiles Hands' claims for monetary relief are **dismissed with prejudice**.[11]

---

Court's confirmation of same – was prepared in ignorance of (and in no way accounted for) Hands' contingent interests in his discrimination claims against Winn-Dixie.  Had Hands obtained a favorable settlement or judgment of those claims without this nondisclosure being brought to light, he could have retained the fruits of that result without paying his creditors an extra penny based on the judicially approved plan.  So Hands' misleading of the Bankruptcy Court has already taken place, and but for Winn-Dixie's sleuthwork in exposing the nondisclosure, neither his creditors nor the Bankruptcy Court ever would have been the wiser.  This is simply not a case in which the Bankruptcy Court had taken no action on the plaintiff's nondisclosures before they were corrected.  *Cf. Strauss v. Rent-A-Center, Inc.*, 2006 WL 1914219, *1 (11th Cir. July 11, 2006) (judicial estoppel inapplicable where bankruptcy court had never entered order discharging debt in reliance on plaintiff's nondisclosure of employment discrimination action).

Nor does the Court accept Hands' suggestion that judicial estoppel is inappropriate here because dismissing his claims for monetary relief would be to the detriment of his creditors in the bankruptcy proceeding.  If Hands had been concerned with protecting his creditors, as he now professes to be, he would not have secreted this asset from them for nearly three years until Winn-Dixie forced his hand.  He cannot now be permitted to hide behind the interests of the very creditors harmed by his nondisclosure in an effort to avoid the adverse consequences of that omission.

[11]     This Order does not terminate or otherwise affect Hands' remaining claims for injunctive, declaratory or other non-monetary relief.  *See, e.g., Barger*, 348 F.3d at 1297 (judicial estoppel principles do not bar plaintiff from pursuing claims for injunctive relief, such as requests for reinstatement, where such claims would have added nothing of value to the bankruptcy estate even if they had been disclosed); *Burnes*, 291 F.3d at 1289 ("the important and necessary reasons that bar Billups' monetary claims do not affect his efforts to change, through (Continued)

DONE and ORDERED this 1st day of November, 2010.

                                                    s/ WILLIAM H. STEELE
                                                    CHIEF UNITED STATES DISTRICT JUDGE

---

injunctive relief, Pemco's employment practices"). In any event, Winn-Dixie has not moved for summary judgment as to Hands' claims for non-monetary relief, but instead confined its Rule 56 motion solely to his claims for monetary relief.